IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN
MADISON DIVISION

| | |
|---|---|
| Richard Masephol<br><br>        Plaintiff,<br>  v.<br><br>3M Company, *a corporation*;<br>Donaldson Company, Inc., *a corporation*;<br>Gardner Denver, Inc., *a corporation*;<br>Honeywell International Inc., *a corporation*;<br>Metropolitan Life Insurance Company*, a corporation*;<br>Owens-Illinois, Inc., *a corporation*;<br>Weyerhaeuser Company, *a corporation;*<br><br>        Defendants. | Case No. 14-cv-186 |

**COMPLAINT**

---

  Now comes the plaintiff, Richard Masephol, by and through his attorney, Michael Cascino, and complains against the above defendants as follows:

**JURISDICTION AND PARTIES**

1. Plaintiff Richard Masephol is an adult citizen and resident of Chili, Wisconsin.

2. Defendant 3M Company ("3M") designed, manufactured, and sold masks, including without limitation the 3M 8710. 3M represented that its masks prevented exposure to asbestos, but they failed to protect plaintiff against such exposures. At all times plaintiff thought that these masks protected him from asbestos exposure. Plaintiff wore 3M masks on a regular basis.

3. Defendant Weyerhaeuser Company ("Weyerhaeuser") is the former owner of the Marshfield, Wisconsin door manufacturing plant ("Marshfield plant") where asbestos products were manufactured. Defendant Weyerhaeuser Company is also legally

responsible for the conduct of Roddis Plywood Corporation.   Defendant Weyerhaeuser is being sued only by the plaintiff for the exposures to asbestos that took place outside of the work place.

4. Defendant Donaldson Company, Inc. ("Donaldson") is responsible for the conduct of Carter Day. Carter Day designed, manufactured, and sold asbestos dust control devices, including without limitation baghouse dust collectors. Carter Day's vacuum system and its baghouses did not prevente asbestos dust from contaminating the plant and the surrounding environment. Moreover, the vacuum system did not suck up all of the asbestos at worker's stations and the Carter Day bag filter houses at the Marshfield plant routinely malfunctioned, exposing plaintiff and others to asbestos dust both in the plant and in the surrounding environment.

5. Defendant Gardner Denver, Inc. ("Gardner Denver") is responsible for the conduct of Hoffman Air Systems. Hoffman designed, manufactured, and sold dust collection systems intending to prevent asbestos dust from contaminating the plant and the surrounding environment. However, the Hoffman vacuum system at the Marshfield plant did not suck up all of the asbestos at worker's stations and the baghouse system routinely malfunctioned, exposing plaintiff and others to asbestos dust both in the plant and in the surrounding environment.

6. Defendant Honeywell International Inc. ("Honeywell") is responsible for the entity that designed, manufactured, and/or sold Willson respirators. Willson represented that its masks prevented exposure to asbestos, but they failed to protect users against such exposures.  At all times plaintiff thought that these masks protected him from asbestos exposure.

7. Defendant Metropolitan Life Insurance Company ("MetLife") conspired and acted to conceal information about the health hazards of asbestos from both individual end-users and industry.

8. Defendant Owens-Illinois, Inc. ("O-I") had a patent to make fire doors. O-I licensed its patent for the manufacture of fire doors incorporating asbestos-containing core material to Roddis Plywood Corporation and Weyerhaeuser Company. Beginning in the early 1950s and continuing for many years thereafter into the 1960s and likely even later, defendant Owens-Illinois received royalties from defendants Roddis and Weyerhaeuser for use of the patent to make fire doors. The receipt of such royalties makes Owens-Illinois liable as a designer of a dangerous product and for failing to warn workers that asbestos was dangerous.

9. Jurisdiction is based on diversity of citizenship of the parties hereto under Title 28, United States Code, §1332.

10. The amount in controversy exceeds the sum of Seventy-Five Thousand Dollars ($75,000), exclusive of interest and costs.

11. Venue is proper pursuant to Title 28, United States Code, §1391.

## GENERAL ALLEGATIONS

12. Plaintiff inhaled airborne asbestos.

13. During the period of his exposures, plaintiff was told asbestos could be potentially be harmful. Plaintiff was not told how harmful asbestos was. Plaintiff thought a paper mask would protect him from airborne asbestos.

14. As a direct and proximate result of the conduct of defendants, plaintiff has been diagnosed with asbestos related diseases, including without limitation malignant mesothelioma.

15. The asbestos disease process and injury began before April, 1994.

16. All exposures to asbestos that plaintiff received contributed to and caused the plaintiff's asbestos related conditions.

17. Plaintiff suffers great pain, physical impairment, and great mental pain and anguish. He is liable for large sums of money for medical and hospital care, and suffered losses to his personal property and possessions.

## **COUNT I - PRODUCT LIABILITY – NEGLIGENCE – 3M COMPANY**

18. Plaintiff brings this claim for negligence and restates and re-alleges the allegations in listed above.

19. Plaintiff brings this claim against 3M for designing, manufacturing, and selling paper masks that did not work as intended and failing to warn workers that the safety equipment did not protect them from breathing asbestos.

20. It was reasonably foreseeable that plaintiff and other workers would be injured if 3M paper masks did not protect plaintiff from breathing asbestos and be exposed to airborne asbestos fibers.

21. Defendant had a duty to exercise reasonable care for the safety of plaintiff and others who relied on the defendant's protective products.

22. Defendant knew or in the exercise of ordinary or reasonable care ought to have known that their asbestos protective equipment did not protect plaintiff and others from asbestos.

23. Plaintiff believed 3M Company masks would protect him from the asbestos exposure.

24. Defendant had a duty to exercise reasonable care for the safety of plaintiff and others who worked with the defendant's products.

25. Defendant breached its duty of care and was negligent, including without limitation in one

or more of the following acts or omissions:

a. Failed to adequately warn plaintiff or others that the paper masks did not protect plaintiff from exposure to asbestos;

b. Failed to investigate that the paper masks would not protect plaintiff from exposure to asbestos;

c. Failed to warn users of these masks that they did not provide adequate protection from airborne asbestos fibers.

d. Used defectively designed asbestos-protective masks which did not protect against airborne asbestos fibers;

e. Designed masks that were sold to protect against the asbestos but did not;

f. After learning and admitting that the masks were ineffective, 3M failed to tell such workers that the masks did not work as intended to protect them from breathing airborne asbestos fibers.

26. As a direct and proximate result of the acts and omissions of the product defendants above, plaintiff was injured as described above.

## COUNT II - PRODUCTS LIABILITY – NEGLIGENCE – OWENS-ILLINOIS INC.

27. Plaintiff brings this count for negligence against defendant Owens-Illinois, Inc. and incorporates by reference all general allegations.

28. Defendant Owens-Illinois was being paid royalties by Roddis Company and Weyerhaeuser for the use of a patent owned by Owens-Illinois for making asbestos containing fire doors.

29. It was reasonably foreseeable that Plaintiff and other workers would be working with or in the proximity of asbestos products and be exposed to airborne asbestos fibers from products made with O-I's patent.

30. Defendant had a duty to exercise reasonable care for the safety of Plaintiff and others who worked with or were exposed to the asbestos products made with O-I's patent.

31. Defendant knew or in the exercise of ordinary or reasonable care ought to have known

asbestos causes disease and or death, and that Plaintiff did not know that asbestos products were as dangerous or harmful at the time of his exposures.

32. Defendant breached its duty of care and was negligent, including without limitation in one or more of the following acts or omissions:

   a. Failed to adequately warn Plaintiff or others of the health hazards of asbestos;

   b. Failed to warn Plaintiff or others of the danger and harm of the asbestos after the products or equipment were installed at the premises;

   c. Failed to investigate or test for the health effects of asbestos prior to distribution and sale;

   d. Failed to instruct Plaintiff, her employers or others in the use of precautionary measures relating to asbestos-containing products and/or asbestos-insulated equipment.

33. As a direct and proximate result of the acts and omissions of the product defendants above, Plaintiff was injured as described above.

## COUNT III - PRODUCT LIABILITY – NEGLIGENCE – DONALDSON COMPANY

34. Plaintiff brings this claim for negligence and restates and re-alleges the allegations listed above.

35. Plaintiff brings this claim against the Donaldson for designing, manufacturing, and selling safety equipment that did not work as intended and failing to warn workers that the safety equipment did not protect them from breathing asbestos.

36. It was reasonably foreseeable that plaintiff and other workers would be injured if the above products did not protect them from asbestos and be exposed to airborne asbestos fibers.

37. Defendant had a duty to exercise reasonable care for the safety of plaintiff and others who worked with the defendant's protective products.

38. Defendant knew or in the exercise of ordinary or reasonable care ought to have known that

their asbestos protective equipment did not protect plaintiff and others from asbestos.

39. Plaintiff believed that Donaldson Company's vacuum and baghouse system could protect him from asbestos.

40. Defendant had a duty to exercise reasonable care for the safety of plaintiff and others who relied upon the systems to protect workers from all exposures to asbestos.

41. Defendant breached its duty of care and was negligent, including without limitation in one or more of the following acts or omissions:

 a. Failed to adequately warn plaintiff or others that the dust collection system did not protect plaintiff from exposure to asbestos;

 b. Failed to investigate that the dust collection system would not protect plaintiff from exposure to asbestos;

 c. Used defectively designed asbestos dust collection system which did not protect against or prevent the release of asbestos fibers;

 d. Used unsafe techniques, methods, or processes in the design and installation of removal of asbestos containing products.

42. As a direct and proximate result of the acts and omissions of the product defendants above, plaintiff was injured as described above.

## COUNT IV - PRODUCT LIABILITY – NEGLIGENCE – GARDNER DENVER INC.

43. Plaintiff brings this claim for negligence and restates and re-alleges the allegations listed above.

44. Plaintiff brings this claim against the Donaldson for designing, manufacturing, and selling safety equipment that did not work as intended and failing to warn workers that the safety equipment did not protect them from breathing asbestos.

45. It was reasonably foreseeable that plaintiff and other workers would be injured if the above products did not protect them from asbestos and be exposed to airborne asbestos fibers.

46. Defendant had a duty to exercise reasonable care for the safety of plaintiff and others who worked with the defendant's protective products.

47. Defendant knew or in the exercise of ordinary or reasonable care ought to have known that their asbestos protective equipment did not protect plaintiff and others from asbestos.

48. Plaintiff believed that Gardner Denver, Inc.'s vacuum and baghouse system would protect plaintiff from asbestos.

49. Defendant had a duty to exercise reasonable care for the safety of plaintiff and others who relied upon the defendant's vacuum and baghouse system to protect against asbestos exposures.

50. Defendant breached its duty of care and was negligent, including without limitation in one or more of the following acts or omissions:

    a. Failed to adequately warn plaintiff or others that the dust collection system did not protect plaintiff from exposure to asbestos;

    b. Failed to investigate that the dust collection system would not protect plaintiff from exposure to asbestos;

    c. Used defectively designed asbestos dust collection system which did not protect against or prevent the release of asbestos fibers;

    d. Used unsafe techniques, methods, or processes in the design and installation of the vacuum and baghouse system that made it ineffective.

51. As a direct and proximate result of the acts and omissions of the product defendants above, plaintiff was injured as described above.

## COUNT V - PRODUCT LIABILITY – NEGLIGENCE – HONEYWELL INTERNATIONAL INC.

52. Plaintiff brings this claim for negligence and restates and re-alleges the allegations in listed above.

53. Plaintiff brings this claim against Honeywell for designing, manufacturing, and selling paper masks that did not work as intended and failing to warn workers that the safety equipment did not protect them from breathing asbestos.

54. It was reasonably foreseeable that plaintiff and other workers would be injured if the above products did not protect them from asbestos and be exposed to airborne asbestos fibers.

55. Defendant had a duty to exercise reasonable care for the safety of plaintiff and others who worked with the defendant's protective products.

56. Defendant knew or in the exercise of ordinary or reasonable care ought to have known that their asbestos protective equipment did not protect plaintiff and others from asbestos.

57. Plaintiff believed Willson masks would protect him from the asbestos exposure.

58. Weyerhaeuser records show Willson masks were used at the facility.

59. Plaintiff believed that the paper masks would protect plaintiff from asbestos.

60. Defendant had a duty to exercise reasonable care for the safety of plaintiff and others who worked with the defendant's products.

61. Defendant breached its duty of care and was negligent, including without limitation in one or more of the following acts or omissions:

    a. Failed to adequately warn plaintiff or others that the paper masks did not protect plaintiff from exposure to asbestos;

    b. Failed to investigate that the paper masks would not protect plaintiff from exposure to asbestos;

    c. Used defectively designed asbestos-protective masks which did not protect against or prevent the inhalation of asbestos fibers;

    d. Used unsafe techniques, methods, or processes in the design of the paper masks.

62. As a direct and proximate result of the acts and omissions of the product defendants above, plaintiff was injured as described above.

## COUNT VI – NEGLIGENCE – WEYERHAUESER COMPANY

63. Plaintiff brings this count for negligence against defendant Weyerhaeuser Company.

64. Plaintiff restates and re-alleges the general allegations listed above.

65. Weyerhaeuser Company is responsible for the ownership and operation of the Weyerhaeuser door manufacturing facility (f/k/a Roddis Plywood Corporation) in Marshfield during the period of plaintiff's exposures.

66. Weyerhaeuser Company, during its operations of the Marshfield plant, caused asbestos fibers to be released and contaminate the air:

    a. in the community surrounding the plant; and

    b. in areas more distant from the plant by transport through various means, including without limitation contaminated worker clothing and vehicles hauling asbestos waste materials to various sites throughout Marshfield.

67. Plaintiff and others breathed in these asbestos fibers outside of the plant.

68. The inhalation of asbestos fibers from contaminated air in the community surrounding the plant, housing, vehicles, and other places frequented by plaintiff is unrelated to any employment relationship with Weyerhaeuser Company.

69. It was reasonably foreseeable that plaintiff and other persons would be in proximity to asbestos in the ambient air outside the Weyerhaeuser facility, or to the other locations to which the fibers were transported, and plaintiff and others would have inhaled airborne asbestos fibers released from Weyerhaeuser's Marshfield operations.

70. Weyerhaeuser Company had a duty to exercise reasonable care for the safety of plaintiff and others from asbestos fibers released during Weyerhaeuser's operations of the Marshfield plant which would foreseeably contaminate the air surrounding the plant and other locations to which the fibers were transported.

71. Weyerhaeuser Company knew or in the exercise of ordinary or reasonable care ought to have known asbestos causes disease and/or death.

72. Plaintiff did not know that asbestos in the ambient air outside the plant and the waste and dumping outside the community were so dangerous or harmful at the time of his exposures.

73. Weyerhaeuser Company breached its duty of care and was negligent, including without limitation in one or more of the following acts or omissions:

    a. Dumping asbestos was dangerous and exposed plaintiff to asbestos;

    b. Failed to stop asbestos from leaving the plant and contaminating the community;

    c. Failed to adequately warn plaintiff or others of the health hazards of asbestos that left the plant in the air;

    d. Failed to adequately test for air levels of asbestos outside of the plant;

    e. Failed to inform the community that dangerous levels of asbestos were being emitted into the ambient air;

    f. Failed to adequately instruct plaintiff or others that asbestos was in the ambient air and should not be breathed;

    g. Used defectively designed equipment which did not protect against or prevent the release of asbestos fibers into the community;

    h. Failed to use proper engineering techniques or methods, or used unsafe techniques or methods, in handling, processing, and disposal of asbestos-containing materials.

    i. Violated agency regulations issued pursuant to the United States Occupational Safety and Health Act, 29 U.S.C. §651, et seq.

    j. Violated other agency regulations, including without limitation the United States Environmental Protection Agency National Emission Standards for Hazardous Air Pollutants, originally published at 36 Fed. Reg. 3951, March 31, 1971;

    k. Violated regulations issued by the Wisconsin Industrial Commission, including without limitation General Orders on Dusts, Fumes, Vapors and Gases, Order 2002; And Wis. Adm. Code Ind 12.20;

    l. Exceeded other air quality standards or guidelines, including without limitation the Threshold Limit Values of the American Conference of Governmental Industrial

        Hygienists; and

    m.     Failed to take corrective action after being put on notice of the above violations.

74. As a direct and proximate result of the acts and omissions of the premises defendant above, plaintiff was injured as described above.

## COUNT VII – NUISANCE – WEYERHAEUSER COMPANY

75. Plaintiff incorporates by reference all general allegations above and brings this count against defendant Weyerhaeuser Company.

76. Weyerhaeuser Company is responsible for the ownership and operation of the door manufacturing plant in Marshfield, Wisconsin during the period of plaintiff's exposures outside the plant.

77. Weyerhaeuser Company, during operations of its Marshfield plant, caused asbestos fibers to be released into and contaminate the public air in, at, and around the plant.

78. Weyerhaeuser Company, during operations of the Marshfield plant, caused asbestos fibers to be released into the public air and in other areas more distant from the plant by transport through various means, including without limitation contaminated worker clothing and vehicles hauling asbestos waste materials.

79. Breathing uncontaminated public air is a public right.

80. The release and transport of asbestos fibers as described above caused contamination of housing, vehicles, local farms, roads and other places frequented by plaintiff which contained public air.

81. Plaintiff and others inhaled the contaminated public air in the community surrounding the plant, housing, vehicles, local farms, roads and other places frequented by plaintiff.

82. The inhalation of asbestos fibers from contaminated public air in the community

surrounding the plant, housing, vehicles, and other places frequented by plaintiff is unrelated to any employment relationship with defendant.

83. The inhalation of asbestos fibers is a health hazard.

84. The release of asbestos fibers into the public air interfered with and endangered the use of public places, the right to breath the public air, the use of residences and vehicles, and other activities of the entire community in one or more of the following ways:

   a. Violated agency regulations issued pursuant to the United States Occupational Safety and Health Act, 29 U.S.C. §651, et seq. as set forth in citations issued by OSHA dated December 18, 1973;

   b. Violated other agency regulations, including without limitation the United States Environmental Protection Agency National Emission Standards for Hazardous Air Pollutants, originally published at 36 Fed. Reg. 3951, March 31, 1971;

   c. Violated regulations issued by the Wisconsin Industrial Commission, including without limitation General Orders on Dusts, Fumes, Vapors and Gases, Order 2002; and Wis. Adm. Code Ind 12.20;

   d. Exceeded other air quality standards or guidelines, including without limitation the Threshold Limit Values of the American Conference of Governmental Industrial Hygienists;

   e. Adversely affected the health interests of the community at large; and

   f. Interfered with the public health and safety;

85. As a direct and proximate result of the nuisance, plaintiff was injured as described above.

## COUNT VIII – PRODUCTS LIABILITY – STRICT LIABILITY – GARDNER DENVER INC.

86. Plaintiff brings this claim for strict liability against defendant Gardner Denver Inc.

87. Plaintiff restates and re-alleges the allegations set forth above.

88. Defendants were at all relevant times in the business of selling dust control devices.

89. Defendants designed, manufactured, and/or sold dust control devices that malfunctioned or otherwise failed to adequately control dust, exposing plaintiff to asbestos dust at the

Marshfield plant and in the surrounding environment.

90. Defendants placed their dust control devices into the stream of commerce with the expectation that they would reach plaintiff and other users and consumers without substantial change in the condition they were in when they left the possession or control of defendants.

91. Plaintiff worked in a plant that used defendant's dust control devices in the conditions in which they left the possession or control of such defendants.

92. Defendant's dust control devices were defective and unreasonably dangerous at the time they left the possession or control of defendant in one or more of the following ways:

   a. Failed to adequately warn plaintiff or others that the dust control systems did not sufficiently protect against the health hazards of asbestos;

   b. Failed to investigate or test for the effectiveness of the dust control systems;

   c. Failed to instruct plaintiff, his employers, or others in the use of precautionary measures relating to airborne asbestos fibers;

   d. Defectively designed their dust control devices such that they did not protect against or prevent exposure to asbestos fibers;

   e. Failed to warn plaintiff or others of the danger of the airborne asbestos fibers released from the baghouse system;

   f. Failed to specify proper techniques, methods or processes in the installation or maintenance of the asbestos dust control devices.

100. As a direct and proximate result of the acts and omissions of the product defendant above, plaintiff was injured as described above.

## COUNT IX – PRODUCTS LIABILITY – STRICT LIABILITY – DONALDSON COMPANY

101. Plaintiff brings this claim for strict liability against defendant Donaldson Company.

102. Plaintiff restates and re-alleges the allegations set forth above.

103. Defendant was at all relevant times in the business of selling dust control devices.

104. Defendant designed, manufactured, and/or sold dust control devices that did not vacuum up all the asbestos dust and malfunctioned or otherwise failed to adequately control dust, exposing plaintiff to asbestos dust outside the Marshfield plant and in the surrounding environment.

105. Defendant placed their dust control devices into the stream of commerce with the expectation that they would reach plaintiff's employer and other users and consumers without substantial change in the condition they were in when they left the possession or control of defendant.

106. Plaintiff worked in a plant that used defendants' dust control devices;

107. Defendant's dust control devices were defective and unreasonably dangerous at the time they left the possession or control of defendant in one or more of the following ways:

   a. Failed to adequately warn plaintiff or others that the system did not fully protect people against the health hazards of asbestos;

   b. Failed to investigate or test for the effectiveness of asbestos dust control systems;

   c. Failed to instruct plaintiff, his employers, or others in the use of precautionary measures relating to airborne asbestos fibers;

   d. Defectively designed their dust control devices such that they did not protect against or prevent exposure to asbestos fibers outside in the community;

   e. Failed to warn plaintiff or others of the danger of the airborne asbestos fibers released into the air because of the failures of the products or equipment;

   f. Failed to design in the installation and maintenance of the asbestos dust control devices that would protect the surrounding community from asbestos exposure.

108. As a direct and proximate result of the acts and omissions of the product defendant above, plaintiff was injured as described above.

## COUNT X – PRODUCTS LIABILITY – STRICT LIABILITY – 3M COMPANY

109. Plaintiff brings this claim for strict liability against defendant 3M Company.

110. Plaintiff re-states and re-alleges the allegations set forth above.

111. Defendant was at all relevant times in the business of selling personal protective equipment, including but without limitation to masks.

112. Defendant's personal protective equipment reached plaintiff without substantial or unforeseeable change in the condition in which it was sold.

113. Plaintiff recalls using 3M paper masks.

114. Defendant designed, manufactured, and/or sold masks that failed to protect plaintiff from breathing asbestos fibers.

115. Defendant placed their personal protective equipment into the stream of commerce with the expectation that they would reach plaintiff and other users and consumers without substantial change in the condition they were in when they left the possession or control of defendant.

116. Plaintiff used defendant's personal protective equipment in the conditions in which they left the possession or control of such defendant.

117. At all times, plaintiff believed that the 3M masks would protect plaintiff from asbestos exposures.

118. Defendant's personal protective equipment was defective and unreasonably dangerous at the time it left the possession or control of defendant in one or more of the following ways:

    a. Failed to adequately warn plaintiff or others that the masks did not fully protect against the health hazards of asbestos;

  b. Failed to investigate or test for the effectiveness of preventing the breathing of asbestos fibers with these masks;

  c. Defectively designed their personal protective equipment such that it did not protect against or prevent exposure to asbestos fibers;

  d. Failed to specify proper techniques, methods or processes in the use of the masks as personal protective equipment.

133. As a direct and proximate result of the acts and omissions of the defendant above, plaintiff was injured as described above.

### COUNT XI – PRODUCTS LIABILITY – STRICT LIABILITY – HONEYWELL INC.

134. Plaintiff brings this claim for strict liability against defendant Honeywell Inc.

135. Plaintiff re-states and re-alleges the allegations set forth above.

136. Defendant was at all relevant times in the business of selling personal protective equipment, including without limitation masks.

137. Defendant's personal protective equipment reached plaintiff without substantial or unforeseeable change in the condition in which it was sold.

138. Defendant designed, manufactured, and/or sold masks that failed to protect plaintiff from breathing asbestos fibers.

139. Defendant placed their personal protective equipment into the stream of commerce with the expectation that they would reach plaintiff and other users and consumers without substantial change in the condition they were in when they left the possession or control of defendant.

140. Plaintiff used defendant's personal protective equipment in the conditions in which they left the possession or control of such defendant.

141. Defendant's personal protective equipment was defective and unreasonably dangerous at

the time it left the possession or control of defendant in one or more of the following ways:

    a.    Failed to adequately warn plaintiff or others of the health hazards of asbestos;

    b.    Failed to investigate or test for the effectiveness of preventing the breathing of asbestos fibers;

    c.    Defectively designed their personal protective equipment such that it did not protect against or prevent exposure to asbestos fibers;

    d.    Failed to specify proper techniques, methods or processes in the use of the personal protective equipment.

140.    As a direct and proximate result of the acts and omissions of the defendant above, plaintiff was injured as described above.

## COUNT XII – CIVIL CONSPIRACY

141.    Plaintiff brings this cause of action for civil conspiracy against defendant Metropolitan Life Insurance Company.

142.    Plaintiff restates and re-alleges the allegations listed above.

143.    Defendant Metropolitan Life and other unnamed co-conspirators knowingly and willfully combined, agreed, and conspired with each other for the purpose of accomplishing one or more of the following unlawful purposes:

    a.    Suppressing information about the health hazards of asbestos, including medical and scientific data, from those persons who would be exposed to the asbestos from the products made and sold by the conspirators,

    b.    Affirmatively asserting, in a manner not warranted by the information possessed by the conspirators, claims that the conspirators knew were false, namely, that it was safe to work with and in close proximity to asbestos.

144.    One or more of the conspirators, including Metropolitan Life, performed the following tortious acts in furtherance of the conspiracy:

a. Failed to warn about health hazards of asbestos; failed to investigate health hazards of asbestos;

b. interfered with scientific and medical studies about the health hazards of asbestos; or

c. failed to instruct about precautionary measures required for protection.

145. As a direct and proximate result of the acts of the conspiracy described above, plaintiff was injured as described above.

## COUNT XIII – PUNITIVE DAMAGES

146. Defendants acted maliciously, with intentional disregard for the rights of plaintiff for which plaintiff is entitled to recover punitive damages.

## COUNT XIV  - DECLORATORY JUDGMENT – UNCONSTITUTIONAL

147. In 1995 Wisconsin enacted Act 17 which created restrictions on recoveries by victims of personal injuries.

148. In 2011 Wisconsin enacted Act 2 which created restrictions on recoveries by victims of personal injuries.

149. Plaintiff seeks a declaration that retroactive application of 2005 Act 155 and 2011 Act 2 to limit the recovery in this case is unconstitutional.

## PRAYER FOR RELIEF

Plaintiff prays for relief as follows:

a. Judgment against defendant, jointly and severally, for compensatory and general damages.

b. Punitive damages in an amount to be determined against each defendant.

c. A declaration that 1995 Act 17 and 2011 Act 2 are unconstitutional as applied to this case.

      d.      Such further legal and equitable relief as the court orders to do justice in this case, including without limitation award of costs and disbursements of this action.

## JURY TRIAL DEMAND

Plaintiff hereby demands a trial by a jury.

Dated: March 7, 2014

\_/s/Michael P. Cascino_____
Michael P. Cascino
Attorney for plaintiff
Cascino Vaughan Law Offices, Ltd.
220 S. Ashland Avenue
Chicago, Illinois 60607
Phone: 312.944.0600
Fax: 312.944.1870
Email1: ecf.cvlo@gmail.com
Email2: mcascino@cvlo.com