**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF WISCONSIN**
**MADISON DIVISION**

| | |
|---|---|
| Richard Masephol, | Case No. 14-cv-186 |
| Plaintiff, | |
| v. | |
| Weyerhaeuser Company, *a corporation;* 3M Company, *a corporation*; Donaldson Company, Inc., *a corporation*; Gardner Denver, Inc., *a corporation*; Metropolitan Life Insurance Company*, a corporation*; Owens-Illinois, Inc., *a corporation*; Unknown Insurers of Owens-Illinois, Inc., *a corporation;* Unknown Insurers of Roddis Plywood Corporation, *a corporation;* Unknown Insurers of Weyerhaeuser Company, *a corporation;* | |
| Defendants. | |

**FIRST AMENDED COMPLAINT**

Plaintiff Richard Masephol, by and through his attorneys, Cascino Vaughan Law Offices, Ltd., complains against the above defendants as follows:

**JURISDICTION AND PARTIES**

1.     Plaintiff Richard Masephol is an adult citizen and resident of Chili, Wisconsin.

2.     Defendant Weyerhaeuser Company ("Weyerhaeuser") is the former owner of the Marshfield, Wisconsin door manufacturing plant ("Marshfield plant") where asbestos fireproofing products were manufactured and asbestos containing products were used in

manufacturing production.   Weyerhaeuser is legally responsible for the conduct of Roddis Plywood Corporation, the former owner and operator of the Marshfield plant.

3.      Defendant 3M Company ("3M") designed, manufactured, and sold masks for personal breathing protection in occupational settings, including without limitation the 3M 8710.

4.      Defendant Donaldson Company, Inc. ("Donaldson") is responsible for the conduct of Carter Day International Inc. ("Carter Day"). Carter Day designed, manufactured, and sold dust control devices, including without limitation bag-house dust collectors.

5.      Defendant Gardner Denver, Inc. ("Gardner Denver") is responsible for the conduct of Hoffman Air Systems ("Hoffman"). Hoffman designed, manufactured, and sold dust control devices.

6.      Defendant Metropolitan Life Insurance Company ("MetLife") conspired and acted to conceal information about the health hazards of asbestos from both individual end-users and industry.

7.      Defendant Owens-Illinois, Inc. ("O-I") designed and sold licenses for a patent to manufacture of fire doors incorporating asbestos-containing cores.   O-I also manufactured, sold, and designed asbestos products, including without limitation fire doors and fire door cores.   O-I was the owner of the tradename "Kaylo" which was used in selling the doors, cores, and patent licenses.

8.      Unknown Insurers of Owens-Illinois, Inc. are named pursuant to Wis. Stats. §803.04(2)(a) as they have an interest in the outcome adverse to the plaintiff.

9.      Unknown Insurers of Roddis Plywood Corporation are named pursuant to Wis. Stats. §803.04(2)(a) as they have an interest in the outcome adverse to the plaintiff.

2

10.     Unknown Insurers of Weyerhaeuser Company are named pursuant to Wis. Stats. §803.04(2)(a) as they have an interest in the outcome adverse to the plaintiff.

11.     Jurisdiction is based on diversity of citizenship of the parties hereto under Title 28, United States Code, §1332.

12.     The amount in controversy exceeds the sum of Seventy-Five Thousand Dollars ($75,000), exclusive of interest and costs.

13.     Venue is proper pursuant to Title 28, United States Code, §1391.

## GENERAL ALLEGATIONS

14.     The operations at the Marshfield plant involve cutting, sawing, and trimming of asbestos containing fire doors and cleanup, and disposal of the waste and scrap from such doors. At certain times the mixing of asbestos fibers to make the cores for the fire doors was a part of the manufacturing process.

15.     Plaintiff inhaled airborne asbestos fibers released during operations at the Marshfield plant as a result of the following:

    a.      his employment at the Marshfield plant beginning in about 1973;

    b.      asbestos fibers contaminating the home, auto, lunchroom, and other locations where non-work related activities were performed;

    c.      asbestos fibers released from the Marshfield plant operations which contaminated the surrounding community;

    d.      transport of asbestos fibers from the Marshfield plant to other locations.

16.     During the period of his exposures, plaintiff did not understand or appreciate the dangerous nature of asbestos and of the nature of the risks of asbestos.

17.     As a direct and proximate result of the conduct of defendants, plaintiff suffered from the

3

asbestos related disease malignant mesothelioma.

18.    The asbestos disease process and injury began before April, 1994.

19.    All exposures to asbestos that plaintiff received contributed to and caused the plaintiff's asbestos related conditions.

20.    Plaintiff suffers great pain, physical impairment, and great mental pain and anguish. He is liable for large sums of money for medical and hospital care, and suffered losses to his personal property and possessions.

## COUNT I - PRODUCT LIABILITY - NEGLIGENCE

21.    Plaintiff brings this claim for negligence and restates and re-alleges the allegations in paragraphs 1 - 20 above.

22.    Plaintiff brings this claim against O-I and unknown insurers of O-I for designing fire doors and selling a license to produce such doors to Weyerhaeuser.

23.    The term "Kaylo fire doors" is used to collectively used to refer to both O-I patented doors and cores sold by O-I.

24.    Pursuant to a written agreement, O-I was paid a royalty for each door produced pursuant to the patented process.

25.    It was reasonably foreseeable to O-I that plaintiff and other workers working in or in proximity to Kaylo door production operations at Weyerhaeuser would inhale asbestos fibers released from the Kaylo doors during the production operations.

26.    Defendant knew or in the exercise of ordinary or reasonable care ought to have known asbestos causes serious and fatal disease.

27.    Plaintiff did not know that asbestos products were dangerous or harmful at the time of his

4

exposures.

28.     Defendant had a duty to exercise reasonable care for the safety of plaintiff and others who

worked with or were exposed to the defendant's asbestos products.

29.     Defendant breached its duty of care and was negligent, including without limitation in one

or more of the following acts or omissions:

    a.     Failed to adequately warn plaintiff or others of the health hazards of asbestos
associated with Kaylo doors;

    b.     Failed to investigate or test for the health effects of asbestos in Kaylo doors;

    c.     Failed to instruct plaintiff, his employers, patent licensees, or others in the use of
precautionary measures relating to airborne asbestos fibers released during
production of Kaylo fire doors;

    d.     Defectively designed the Kaylo doors to incorporate asbestos as an ingredient or
material in their production when substitute materials were available.

30.     As a direct and proximate result of the acts and omissions of the defendant above, the

plaintiff was injured as described above.

## COUNT II – PRODUCT LIABILITY (UNREASONABLY DANGEROUS PRODUCT)

31.     Plaintiff brings this claim for strict product liability and restate and re-allege the allegations

in paragraphs 1 – 30 above.

32.     This claim is asserted against O-I.

33.     Defendant was in the business of selling Kaylo fire doors (including patent rights, doors,

and cores) and other asbestos containing products.

34.     Pursuant to a written agreement, O-I sold the patented process right for each Kaylo door

produced by Weyerhaeuser and was paid a royalty.

35.     The Kaylo patent process was sold with the expectation by O-I that the process would be

followed without substantial change and the production of doors pursuant to the process would release asbestos fibers in the air.

36.    Plaintiff was exposed to asbestos fibers released during the production of the Kaylo doors pursuant to the patented process.

37.    Defendant's patented process was defective and unreasonably dangerous in one or more of the following ways:

    a.    Failed to adequately warn plaintiff or others of the health hazards of asbestos released during production of Kaylo doors;

    b.    Failed to investigate or test for the health effects of asbestos released during production of Kaylo doors;

    c.    Failed to instruct plaintiff, his employers, patent licensees, or others in the use of precautionary measures relating to airborne asbestos fibers released during production of Kaylo fire doors;

    d.    Defectively designed the Kaylo doors to incorporate asbestos as an ingredient or material in their production when substitute materials were available.

38.    As a direct and proximate result of the acts and omissions of the defendant above, the plaintiff was injured as described above.

## COUNT III – NEGLIGENT NUISANCE

39.    Plaintiff incorporates by reference all general allegations above and brings this count against defendant Weyerhaeuser for negligent public and private nuisance.

40.    Weyerhaeuser is responsible for the ownership and operation of the door manufacturing plant in Marshfield, Wisconsin during the period of plaintiff's exposures.

41.    Weyerhaeuser, during operations to manufacture fire doors at the Marshfield plant beginning in the 1950s, caused asbestos fibers to be released and contaminate the air in

various settings in which no work related activities were being conducted or the plaintiff was not engaged in work related activities, including without limitation:

     a.  the community surrounding the plant;

     b.  homes and vehicles;

     c.  landfills; and

     d.  activities on the premises which were not work related.

42.    The operations of Weyerhaeuser's Marshfield plant caused dangerous asbestos fibers to be transported to areas more distant through various means, including without limitation:

     a.  worker clothing, personal effects, hair, and skin which had become contaminated by asbestos fibers at the plant; and

     b.  collecting, removing, hauling, and dumping asbestos waste materials.

43.    The plant emissions and transport of asbestos fibers as described above caused contamination of the community, housing, vehicles, lunchroom and other places frequented by plaintiff Milton Boyer.

44.    Plaintiff and others inhaled asbestos fibers from the contaminated air and property.

45.    The contamination by the asbestos fibers is an unreasonable interference with a right common to the general public to clean air.

46.    The contamination by the asbestos fibers is an unreasonable interference with plaintiff's private rights, including the right to use and enjoy private property.

47.    The unreasonable interference with the plaintiff's private rights and property and the public's right to clean air is unrelated to any employment relationship or duties with defendant.

48. Weyerhaeuser Company had a duty to exercise reasonable care for the safety of plaintiff and the public from asbestos fibers released during Weyerhaeuser's operations of the Marshfield plant or transported to other locations as a result of plant operations.

49. Weyerhaeuser knew or in the exercise of ordinary or reasonable care ought to have known asbestos causes disease and/or death.

50. Plaintiff did not know that asbestos or asbestos products were so dangerous or harmful at the time of his exposures.

51. Weyerhaeuser knew or in the exercise of ordinary or reasonable care ought to have known that Weyerhaeuser's Marshfield plant operations released asbestos into the community or resulted in transport of asbestos fibers to other locations as a result of plant operations.

52. Weyerhaeuser permitted the Marshfield plant operations to continue without abating the release into the community and transport to other locations of asbestos fibers.

53. Weyerhaeuser breached its duty of care and was negligent, including without limitation in one or more of the following acts or omissions:

   a. Failed to adequately warn plaintiff or others of the health hazards of asbestos;

   b. Failed to adequately investigate health effects of asbestos;

   c. Failed to adequately test for air levels of asbestos;

   d. Failed to adequately instruct plaintiff or others in the use of precautionary measures relating to airborne asbestos fibers;

   e. Used defectively designed asbestos-containing products when substitutes were available;

   f. Failed to use proper engineering techniques or methods, or used unsafe techniques or methods, in collecting, removing, hauling, and dumping of asbestos-containing materials.

g.  Violated agency regulations issued pursuant to the United States Occupational Safety and Health Act, 29 U.S.C. §651, et seq.

h.  Violated other agency regulations, including without limitation the United States Environmental Protection Agency National Emission Standards for Hazardous Air Pollutants, adopted originally as Part 61, Chapter 1, Title 40 of the Code of Federal Regulations effective on April 6, 1971.

i.  Violated regulations issued by the Wisconsin Industrial Commission, including without limitation General Orders on Dusts, Fumes, Vapors and Gases, Order 2002; And Wis. Adm. Code Ind 12.20;

j.  Exceeded other air quality standards or guidelines, including without limitation the Wisconsin Division of Natural Resources and Threshold Limit Values of the American Conference of Governmental Industrial Hygienists; and

k.  Failed to take corrective action after being put on notice of the above negligent acts.

54.  The asbestos fibers caused special injury of asbestos related disease to plaintiff Richard Masephol.

55.  The contamination by asbestos fibers from the Marshfield plant operations:

a.  Adversely affected the health interests of the community at large;

b.  Interfered with the public health and safety;

c.  Interfered with the right of plaintiff to enjoyment and use of his property.

56.  As a direct and proximate result of the nuisance, the plaintiff was injured as described above

**COUNT IV – INTENTIONAL NUISANCE**

57.  Plaintiff incorporates by reference all general allegations above and brings this count against defendant Weyerhaeuser for intentional public and private nuisance.

58.  Weyerhaeuser is responsible for the ownership and operation of the door manufacturing

9

plant in Marshfield, Wisconsin during the period of plaintiff's exposures.

59.     The operations of Weyerhaeuser's Marshfield plant caused release and emission of dangerous asbestos fibers which contaminated the air in the surrounding community where plaintiff lived.

60.     The operations of Weyerhaeuser's Marshfield plant caused dangerous asbestos fibers to be transported to areas more distant through various means, including without limitation

   a.   contaminated worker clothing and personal effects; and

   b.   collecting, removing, hauling, and dumping asbestos waste materials.

61.     The plant emissions and transport of asbestos fibers as described above caused contamination of the community, housing, vehicles, lunchroom and other places frequented by plaintiff Richard Masephol.

62.     The contamination by the asbestos fibers is an unreasonable interference with a right common to the general public to clean air.

63.     The contamination by the asbestos fibers is an unreasonable interference with plaintiff's right to use and enjoyment of private property.

64.     Plaintiff and others inhaled asbestos fibers from the contaminated air and property.

65.     The unreasonable interference with the public right to clean air and the private property rights is unrelated to any employment relationship or duties with defendant.

66.     Weyerhaeuser had knowledge of the dangers of asbestos fibers to cause serious diseases and death.

67.     Weyerhaeuser created conditions and activities that released asbestos fibers into the community as a result of Weyerhaeuser's operations of the Marshfield plant and transport

of asbestos fibers to other locations as a result of plant operations.

68.     Weyerhaeuser knew that asbestos fibers were being released into the community and transported to other locations as a result of plant operations.

69.     Weyerhaeuser knowingly, intentionally, and recklessly permitted the Marshfield plant operations to continue without abating the release into the community and transport to other locations of asbestos fibers.

70.     Plaintiff Richard Masephol suffered the special injury of asbestos related disease.

71.     The contamination by asbestos fibers from the Marshfield plant operations:

    d.      Adversely affected the health interests of the community at large;

    e.      Interfered with the public health and safety;

    f.      Interfered with the right of plaintiff to enjoyment and use of their property.

72.     The conduct of Weyerhaeuser created an intentional nuisance for Weyerhaeuser is liable to plaintiff for the injuries as described above.

## COUNT V – PRODUCTS LIABILITY – STRICT LIABILITY

73.     Plaintiff brings this claim for strict liability against defendants Donaldson and Gardner Denver.

74.     Plaintiff restates and re-alleges the allegations set forth in lines 1-70 above.

75.     Defendants were at all relevant times in the business of selling dust control devices.

76.     Defendants placed their dust control devices into the stream of commerce with the expectation that they would reach plaintiff and other users and consumers without substantial change in the condition they were in when they left the possession or control of defendants.

11

77.     Defendants designed, manufactured, and/or sold dust control devices that malfunctioned or otherwise failed to adequately control dust, exposing plaintiff to asbestos dust at the Marshfield plant and in the surrounding environment.

78.     Defendants' dust control devices were defective and unreasonably dangerous at the time they left the possession or control of defendants in one or more of the following ways:

    a.     Failed to adequately warn plaintiff or others of the health hazards of asbestos which existed during operation of the dust control devices;

    b.     Failed to investigate or test for the effectiveness of the dust control devices for preventing exposure to asbestos fibers;

    c.     Failed to instruct plaintiff, his employers, or others in the use of precautionary measures relating to airborne asbestos fibers released during the operation of the dust control devices;

    d.     Defectively designed the dust control devices such that they did not adequately protect against or prevent exposure to asbestos fibers;

79.     As a direct and proximate result of the acts and omissions of the defendants above, the plaintiff was injured as described above.

## COUNT VI – PRODUCTS LIABILITY – NEGLIGENCE

80.     Plaintiff brings this cause of action for negligence against defendants Donaldson and Gardner Denver.

81.     Plaintiff restates and re-alleges the allegations set forth in lines 1-79 above.

82.     It was reasonably foreseeable that defendants' dust control devices would be used to control asbestos-containing dust.

83.     Defendants knew the dust control devices were being used for control of emissions during removal and disposal of asbestos containing materials.

84.    Defendants represented or held out the dust control devices to be effective in the control of emissions during removal and disposal of asbestos containing materials generated during the type of operations at the Marshfield plant.

85.    The dust control devices did not properly control the release of asbestos fibers during the removal and disposal of asbestos containing material at the Marshfield facility.

86.    Defendants had a duty to exercise reasonable care for the safety of plaintiff and others when defendants' dust control devices were used to protect against emissions during removal disposal of asbestos containing waste materials.

87.    Defendants knew or in the exercise of ordinary or reasonable care ought to have known asbestos causes disease and/or death and that the dust control devices were not effective in the control of emissions during removal and disposal of asbestos containing materials generated during the type of operations at the Marshfield plant.

88.    Each defendant breached its duty of care and was negligent, including without limitation in one or more of the following acts or omissions:

    a.    Failed to adequately warn plaintiff or others of the health hazards of asbestos which existed during operation of the dust control devices;

    b.    Failed to investigate or test for the effectiveness of the dust control devices for preventing exposure to asbestos fibers;

    c.    Failed to instruct plaintiff, his employers, or others in the use of precautionary measures relating to airborne asbestos fibers released during the operation of the dust control devices;

    d.    Defectively designed the dust control devices such that they did not adequately protect against or prevent exposure to asbestos fibers.

89.    As a direct and proximate result of the acts and omissions of the defendants above, the plaintiff was injured as described above.

13

## COUNT VII – PRODUCTS LIABILITY – STRICT LIABILITY

90.     Plaintiff brings this claim for strict liability against defendant 3M.

91.     Plaintiff restates and re-alleges the allegations set forth in lines 1-89 above.

92.     Defendant was at all relevant times in the business of selling personal protective

equipment, including without limitation masks.

93.     Defendants knew and expected the masks would be used to protect against the inhalation of

asbestos fibers.

94.     Defendant placed its masks into the stream of commerce with the expectation that they

would reach plaintiff and other users and consumers without substantial change in the

condition they were in when they left the possession or control of defendants.

95.     Defendant's masks reached plaintiff without substantial or unforeseeable change in the

condition in which it was sold.

96.     Plaintiff used defendant's masks in the condition in which they left the possession or

control of such defendants.

97.     Defendant's masks was defective and unreasonably dangerous at the time it left the

possession or control of defendants in one or more of the following ways:

   a.      Failed to adequately warn plaintiff or others of the health hazards of asbestos which
           existed when wearing defendant's masks;

   b.      Failed to investigate or test for the effectiveness of the masks in preventing the
           inhalation of asbestos fibers;

   c.      Failed to instruct plaintiff, his employers, or others about the inadequacies of using
           the masks as precautionary measures against airborne asbestos fibers;

   d.      Defectively designed such that the masks did not adequately protect against or
           prevent exposure to asbestos fibers;

14

      a.   Failed to specify or instruct in the proper use of the masks.

98.     As a direct and proximate result of the acts and omissions of the defendants above, the

plaintiff was injured as described above.

## <u>COUNT VIII – PRODUCTS LIABILITY – NEGLIGENCE</u>

84.     Plaintiff brings this claim for negligence against defendant 3M.

85.     Plaintiff restates and re-alleges the allegations set forth in lines 1-83 above.

86.     It was reasonably foreseeable that defendant's personal protective masks would be used to

prevent exposure to asbestos.

87.     Defendants knew and expected the masks would be used to protect against the inhalation of

asbestos fibers.

88.     Defendants represented or held out the masks to be adequate in the protection against

inhalation of asbestos fibers during the type of operations at the Marshfield plant.

89.     The masks did not properly protect against inhalation of asbestos fibers from the operations

at the Marshfield facility.

90.     Defendant had a duty to exercise reasonable care for the safety of plaintiff and others who

used defendants' personal protective equipment to protect against exposure to asbestos

fibers.

91.     Defendant knew or in the exercise of ordinary or reasonable care ought to have known

asbestos causes disease and/or death.

92.     Defendant breached its duty of care and was negligent, including without limitation in one

15

or more of the following acts or omissions:

a.       Failed to adequately warn plaintiff or others of the health hazards of asbestos which existed when wearing defendant's masks;

b.       Failed to investigate or test for the effectiveness of the masks preventing the inhalation of asbestos fibers;

c.       Failed to instruct plaintiff, his employers, or others about the inadequacies of using the masks as precautionary measures against airborne asbestos fibers;

d.       Defectively designed its personal protective equipment such that it did not adequately protect against or prevent exposure to asbestos fibers;

a. Failed to specify or instruct in the proper use of the masks.

93.     As a direct and proximate result of the acts and omissions of the defendants above, the plaintiff was injured as described above.

## COUNT IX – CIVIL CONSPIRACY

94.     Plaintiff brings this cause of action for civil conspiracy against defendant Metropolitan Life Insurance Company.

95.     Plaintiff restates and re-alleges the allegations set forth in lines 1 – 93 above.

96.     Defendant Metropolitan Life and other unnamed co-conspirators knowingly and willfully combined, agreed, and conspired with each other for the purpose of accomplishing one or more of the following unlawful purposes:

a.       Suppressing information about the health hazards of asbestos, including medical and scientific data, from those persons who would be exposed to the asbestos from the products made and sold by the conspirators,

b.       Affirmatively asserting, in a manner not warranted by the information possessed by the conspirators, claims that the conspirators knew were false, namely, that it was safe to work with and in close proximity to asbestos.

97.     One or more of the conspirators, including Metropolitan Life, performed the following

16

tortious acts in furtherance of the conspiracy:

a.      Failed to warn about health hazards of asbestos; failed to investigate health hazards of asbestos;

b.      interfered with scientific and medical studies about the health hazards of asbestos; or

c.      failed to instruct about precautionary measures required for protection.

98.    As a direct and proximate result of the acts of the conspiracy described above, the plaintiff was injured as described above.

## COUNT X – PUNITIVE DAMAGES

99.    Defendants acted maliciously, with intentional disregard for the rights of plaintiff for which plaintiff are entitled to recover punitive damages.

## COUNT XI - DECLORATORY JUDGMENT – UNCONSTITUTIONAL

100.   In 1995 Wisconsin enacted Act 17 which created restrictions on recoveries by victims of personal injuries.

101.   In 2011 Wisconsin enacted Act 2 which created restrictions on recoveries by victims of personal injuries.

102.   On March 27, 2014 Wisconsin enacted 2013 Act 154 which imposes requirements and creates restrictions on victims of asbestos-related injuries.

103.   Plaintiff seeks a declaration that retroactive application of 2005 Act 155 and 2011 Act 2 to limit the recovery in this case is unconstitutional.

104.   Plaintiff seeks a declaration that 2013 Act 154 is not applicable to this case or, in the alternative, that the requirements and restrictions it creates are unconstitutional.

## PRAYER FOR RELIEF

17

Plaintiff prays for relief as follows:

    a.  Judgment against defendants, jointly and severally, for compensatory and general damages.

    b.  Punitive damages in an amount to be determined against each defendant.

    c.  A declaration that 1995 Act 17 and 2011 Act 2 are unconstitutional as applied to this case.

    d.  A declaration that 2013 Act 154 is not applicable to this case, or, in the alternative, that the requirements and restrictions it creates are unconstitutional.

    e.  Such further legal and equitable relief as the court orders to do justice in this case, including without limitation award of costs and disbursements of this action.

## **JURY TRIAL DEMAND**

Plaintiff hereby demands a trial by a jury.

Dated: May 8, 2014

/s/ Robert G. McCOy_____
Attorney for Plaintiff

Michael P. Cascino
Robert G. McCoy
Cascino Vaughan Law Offices, Ltd.
220 S. Ashland Avenue
Chicago, Illinois 60607
Phone: 312.944.0600
Fax: 312.944.1870
Email1: ecf.cvlo@gmail.com
Email2: mcascino@cvlo.com
Email3: bmccoy@cvlo.com

18