Exhibit

**B**
_____

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| Masephol v. 3M Company, *et al.* | Case No. 3:14-cv-000186-slc |

**Plaintiff's First Supplemental Response to Standard Interrogatories**

Plaintiff generally objects to Defendant Weyerhaeuser's requests for supplementation of his standard interrogatory responses on the grounds that the requests are unduly burdensome, duplicative, cumulative, and premature. Plaintiff objects to specific requests for supplementation as unduly burdensome, duplicative, and cumulative to the extent that they seek information readily accessible to Weyerhaeuser from, without limitation, the following sources: Plaintiff's personnel records maintained by Weyerhaeuser, medical records previously provided by Plaintiff in discovery or obtainable with Plaintiff's previously provided written authorization, and F.R.C.P. 26(a)(1) initial disclosures and other discovery provided by the plaintiffs in *Zickert v. Bayer Crop Science, et al.*, *Jacobs v. Owens-Illinois, Inc., et al.*, and *Heckel v. 3M Company, et al.*.

Plaintiff Richard Masephol supplements his previously provided responses to standard interrogatories as follows:

1.  State your (a) full name, (b) your present address, (c) date and place of birth, (d) Social Security number and (e) military serial number, if any.

    ANSWER:
    (a)   Richard Masephol
    (b)   ███████████Chili, WI 54420
    (c)   ███1954; Neillsville, WI
    (d)   ███-0090
    (e)   N/A

2.  State the (a) name and (b) date of marriage of each spouse or former spouse and (c) list names, current addresses, ages and occupations of all children whether adopted or natural, and (d) the names, current addresses and occupations of all persons dependent upon your support, or receiving monetary support from you, within the last five years.

    ANSWER:

    (a-b)   Mary Walter, 11/22/1984

    (c)   Katrina L. Masephol, 26 years old
          County Road C., Stratford, WI 54484

1

(d)    None

3.    State the specific nature of the personal injuries and/or disease which you allege to have sustained as a result of the exposure complained of.

ANSWER:    Asbestos related disease including without limitation Malignant Mesothelioma.

4.    State the date on which you first suspected that the injuries and/or disease described in interrogatory 3 was in any way related to being exposed to asbestos and state the reasons for your suspicions.

ANSWER:    Plaintiff was first diagnosed with mesothelioma in a pathology report dated January 9, 2014, and signed by Yeping Sun, MD, Ph.D., Ministry St. Joseph's Hospital, Marshfield, WI.  Plaintiff was first told he had mesothelioma on January 13, 2014 by Dr. Seth Fagbemi.

5.    State the date on which the injuries and/or disease described in Interrogatory 3 were first diagnosed and communicated to you and state further the name and address of the physician, specialist, clinic, hospital, sanitarium or similar institution which first diagnosed said injuries and/or disease.  State the manner in which the diagnosis was communicated to you, whether it was written or oral, and if written please attach a copy of that communication to your answers to these interrogatories.

ANSWER:    See answers to Interrogatory No. 4.

6.    State the names and current or last known addresses of all physicians, specialists, clinics, hospitals and sanitariums which examined you or rendered service or treatment to you for the injuries and/or disease you allege to have sustained as the result of the exposure complained of, and state further the date or inclusive dates on which each of them rendered you service or treatment and the amounts of their respective bills.

ANSWER:    Plaintiff does not know or recall all the names. Plaintiff has provided what he knows to his attorneys.

Plaintiff's attorneys state:  Physicians include without limitation:

Dr. Hope Maki
Cardiovascular Surgery
Marshfield Clinic
1000 N. Oak Ave.
Marshfield, WI 54449

2

Dr. Seth Fagbemi
Department of Clinical Oncology
Ministry Saint Joseph's Hospital
Marshfield, WI 54449

Dr. Yeping Sun
Marshfield Laboratories
Marshfield Clinic/Ministry Saint Joseph's Hospital
701 Kalsched Street
Marshfield, WI 54449

Dr. Muhammad Haleem
Department of General Internal Medicine
Marshfield Clinic - Marshfield Center
Marshfield, WI 54449

Dr. Hedy Lee Kindler
The University of Chicago Medicine
5841 S. Maryland Avenue
Chicago, IL 60637

Additional names of physicians appear in plaintiff's medical records, attached as Exhibit 1.

SUPPLEMENTAL RESPONSE 8/15/14:

In addition to the initial response, Plaintiff's counsel states: See Plaintiff's medical records attached as Exhibit G. Chronologically, dates of treatment for Plaintiff's mesothelioma begin in approximately January of 2014.

7.      After being informed that you were suffering from an injury and/or disease caused by asbestos, did you continue to engage in any activity or occupation in which you encountered subsequent exposure to asbestos, and if so state the nature and description of such activity or occupation, and further state whether your continued participation in such activity or occupation  was contrary to medical or professional advice, stating the date on which such advice was given and the identity if the person or entity giving such advice.

ANSWER:      Plaintiff personally has knowledge of his work and non-work activities after January 13, 2014.  Plaintiff's attorneys state:  Exposures to residual asbestos fibers from the Marshfield door plant may have occurred after January 13, 2014 during non work activities.  See answers to Interrogatory No. 19.

SUPPLEMENTAL RESPONSE 8/15/14:

In substitution for the initial response: No.

8.    State the name and current or last known address of all physicians, clinics, or hospitals
      (not listed in interrogatory #6) which have examined you or provided care and treatment
      within the past ten years and the periods or dates of such.

ANSWER:    See answers to Interrogatory No. 6.  Plaintiff does not recall specific dates or
           appointments beyond those disclosed in these interrogatory answers.

SUPPLEMENTAL RESPONSE 8/15/14:

           In addition to the initial response, Plaintiff's counsel states: See Plaintiff's
           medical records attached as Exhibit G.

9.    State the name and current or last known address of any physician, hospital, clinic,
      sanitarium, or other medical personnel (not listed in interrogatory #6) who has ever
      treated you for pulmonary, cardiovascular, or gastro-intestinal complaints.

ANSWER:    See answers to Interrogatory No. 6.

10.   From which of the above medical personnel and/or institutions do you or your attorney
      have written reports?

ANSWER:    Plaintiff's attorneys have records from the Marshfield Clinic. See answers to
           Interrogatory No. 6.

SUPPLEMENTAL RESPONSE 8/15/14:

           In addition to the initial response, Plaintiff's counsel states: See response to
           Interrogatory No. 8.

11.   Has any immediate blood relative (parents, siblings, children) been diagnosed with a
      malignant (cancer) condition?  If so state who, the nature of the disease, and the age at
      which it was diagnosed.

ANSWER:    My father died of prostate cancer around 1972.

SUPPLEMENTAL RESPONSE 8/15/4:

           The answer should read "1992," not "1972."

12.   State any and all other damages not stated in answers to the above interrogatories which
      you are claiming as a result of the injuries and/or diseases alleged in the complaint.

ANSWER:    Mental anguish, emotional distress, pain & suffering, shortness of breath,

diminished enjoyment of life, loss of society and companionship, medical bills. The extent of out of pocket losses and other damage amounts have not been calculated at this time.  Further, plaintiff seeks whatever damages allowable by law.

13.   State whether you have filed any worker's compensation action and, if so, state the date of filing, the name and number of the cause, the respondent, the name and address of the company insuring the respondent, the claim and policy number, the reason for filing the claim or petition, and the  disposition of any such claim.

ANSWER:   Plaintiff's first claim was for blood poisoning in 1973 or 1974. He was carrying a two by four and got a splinter in his arm. Shortly thereafter the vein in his arm became bright red and inflamed over the length of his arm. Plaintiff does not recall the other information requested in this interrogatory, including if he ever collected on this claim.

Plaintiff's second claim was for a hand injury in 2007. Plaintiff's hand was caught between two rollers. No bones broke, but his skin was torn off and he needed to a skin graft. Plaintiff did collect on this claim, but does not recall the amount or any other information requested in this interrogatory.

14.   State whether you have ever filed a lawsuit for personal injury or a claim for social security disability benefits, and if so, state the title, the court or claim number, and the reason for each lawsuit or claim, and the disposition of each lawsuit or claim.

ANSWER:   Plaintiff has not filed any lawsuits or social security claims for disability benefits. Plaintiff is currently in the process of filing for social security disability benefits for the first time.

15.   State the inclusive dates, if any, during which you were a smoker of tobacco and state further the types of tobacco smoked and the amount consumed daily, and whether you customarily inhaled.

ANSWER:   Plaintiff has never been a regular smoker.  Sometimes when he went to bars with friends, plaintiff had an occasional cigarette.

SUPPLEMENTAL RESPONSE 8/15/14:

In addition to the initial response, Plaintiff's counsel states: Plaintiff would smoke cigarettes when drinking in the 1970s and 1980s. Plaintiff estimates that he has smoked 20 or fewer cigarettes in his lifetime. Plaintiff also smoked approximately one cigar per year during that period.

16.   Identify in chronological order every employer for whom you have ever worked in the last 40 years.  State separately for each such employer:

     (a)    the employer's name and address;
     (b)    the nature of the employer's business;
     (c)    the nature and ending dates of your employment including all periods of employment for that employer;
     (d)    your position and responsibilities;
     (e)    your rate of pay.

ANSWER:

     (a)-(d)  See attached without limitation Exhibit A and Exhibit B. Exhibit A identifies and includes without limitation known co-workers, employers, foremen, and persons who have information relevant to exposures in settings outside the Marshfield door plant. Exhibit B includes without limitation known work-sites and length of employment.
     (e)    $17.70 per hour

SUPPLEMENTAL RESPONSE 8/15/14:

In addition to the initial response, Plaintiff's counsel states: All of Plaintiff's employment records in the possession of Plaintiff's attorneys have at this time are attached as Exhibit H. Plaintiff's counsel states further:

I.    Weyerhaeuser

     (a)    Weyerhaeuser
          33663 Weyerhaeuser Way South
          Federal Way, WA 98003, USA
     (b)    Plaintiff's employer Weyerhaeuser made doors, including asbestos-containing fire doors, at the Marshfield plant.
     (c)    1973 to approximately 2000.
     (d)    Plaintiff worked in saw and sand on veneer-faced doors for several months after he was hired in 1973. Then he took a job in the core mill where he worked until 1979. His duties were primarily sawing and sanding asbestos-containing fire door cores, though he also drove jimmie and occasionally mixed glue in the core mill during this period. Plaintiff has worked primarily as a finishing line technician since then.
     (e)    Plaintiff's rate of pay is not relevant because lost wages are not being claimed.

II.     Marshfield DoorSystems

(a)     Marshfield DoorSystems
        1401 East Fourth Street
        Marshfield, WI 54449-7780
(b)     Plaintiff's employer Marshfield DoorSystems makes doors at the
        Marshfield plant.
(c)     Approximately 2000 to approximately 2013.
(d)     Plaintiff worked on the prefinishing line. During his last year on the job,
        Plaintiff worked in shipping loading trucks.
(e)     $17.70 per hour.

Additionally, Plaintiff worked as a heeler at Weinbrenner Shoe Company in Merrill, WI
from 1972-1973.

17.     For each of the employers identified in Interrogatory No. 16, identify each and every job
        site at which you claim to have worked with or around asbestos-containing products.

ANSWER:    See answer to Interrogatory No. 19.  This does not limit or exclude any exposures
           to asbestos that are not work-related.

SUPPLEMENTAL RESPONSE 8/15/14:

        Plaintiff claims to have worked around asbestos-containing products at the door
        plant formerly owned by Weyerhaeuser and located at 1401 East Fourth Street,
        Marshfield, WI.

18.     For each of the job sites identified in Interrogatory No. 17, state the following:

(a)     the location of the job;
(b)     the length of time you worked at that job;
(c)     your superior or foreman living on that job and his last known address;
(d)     your co-workers on that job, including the persons who worked with you
        or at the same job site, and their current or last known addresses.  Identify
        any represented by counsel in asbestos claims.

ANSWER:    See answer to Interrogatories No. 16 and No. 19.

SUPPLEMENTAL RESPONSE 8/15/14:

        In addition to the initial response, Plaintiff's counsel states:

    (a)    1401 East Fourth Street
                 Marshfield, WI 54449-7780

    (b)    Approximately 40 years.

    (c)    Foremen include without limitation Jim Eckes, Lester Schalow, Mark Hasenfang, and Ron Koepke. Plaintiff's attorneys believe that Mr. Koepke resides at 11715 Sunset Drive in Marshfield. Plaintiff's attorneys also believe that defendant Weyerhaeuser has responsive information in its personnel records.

    (d)    See Exhibit A.

19.    For each of the job sites identified in Interrogatory No. 17, state the following:

    (a)    the types of asbestos-containing products for which exposure is claimed;

    (b)    the brand name or trade name of the asbestos-containing products for which exposure is claimed;

    (c)    the manufacturers, suppliers and distributors of each asbestos-containing product for which exposure is claimed;

    (d)    the number of times that plaintiff claims to have been exposed to each product.

ANSWER:    Plaintiff's attorneys make the following statement of claims being made and subject to proof at trial:

Exposures are claimed to asbestos-containing materials used at the door plant in Marshfield, Wisconsin. Claimed exposures include, without limitation, amosite and chrysotile asbestos fibers which became airborne during fire door production and cleanup or removal of dust, scrap, and waste. The types of products included mineral door cores and raw fibers.

Owens-Illinois licensed to Weyerhaeuser a process patent for the production of a composite fire door. Weyerhaeuser produced asbestos-containing fire doors at its Marshfield plant following that patent from the 1950s until the late-1960s and may have continued into the 1970s. Residual fibers from manufacture of OI patented doors continued to remain in the plant until the mid 1980s. Outside the plant the fibers remained for longer periods.

Weyerhaeuser purchased asbestos-containing door cores from several sources, including without limitation Owens-Illinois (Kaylo), Johns-Manville, and Owens-Corning Fiberglas (Kaylo).

Beginning in the late 1960s, Weyerhaeuser began producing its own asbestos-containing door cores. For use in door core production, Weyerhaeuser purchased raw asbestos fibers from several sources, including without limitation North American Asbestos Corporation and Johns-Manville.

Non-work-related exposures to Marshfield door plant asbestos are claimed to have occurred in various settings, including without limitation, non work related activities at the plant; at home; in and around vehicles; in the community; and from plaintiff's own person or personal effects, including without limitation asbestos on his skin, in his hair, and on his food or clothes.

Exposures to asbestos are claimed from the time plaintiff was born in 1954 until the time that residual asbestos fibers were removed from the Marshfield door plant or other settings.

Plaintiff personally has knowledge of his work and non-work activities and observations of visible dust in those settings. The exposures occurred each time during these activities.

SUPPLEMENTAL RESPONSE 8/15/14:

      (d)      Plaintiff claims exposure to Kaylo manufactured by Owens-Illinois and Johns-Manville fire door cores beginning in approximately 1954, Kaylo manufactured by Owens-Corning Fiberglas beginning in approximately 1959, and fire door cores manufactured by Weyerhaeuser beginning in approximately 1968.

              Plaintiff lived with his parents from birth until May or June of 1982. Plaintiff's father worked in the core mill building, where fire door cores were cut and processed. He worked as a door inspector on the second floor and cut door cores on the first floor. During the time in which he lived with his father, Plaintiff claims daily exposure to asbestos fibers from the products listed above that he encountered on his father's clothes, home, and car. Plaintiff also claims daily exposure to asbestos fibers from those products in the workplace during the period in which he worked in the core mill, and any time after that during which he was around residual asbestos fibers inside and outside of the plant. Plaintiff worked in the core mill from approximately 1973 to approximately 1979.

              Plaintiff reserves the right to supplement this response, particularly the portions concerning community exposures, based on expert reports and deposition testimony as well as other discovery.

20.   For each product identified in Interrogatory No. 19, identify the following:

        (a)   your coworkers, including persons who worked with you or at the same job site, with knowledge that the product was on the particular job site;

        (b)   your coworkers, including persons who worked with you or at the same job site, with knowledge that you actually worked with the particular product.

ANSWER:   See response to Interrogatory No. 16 for persons who can testify about the Marshfield door plant site and other settings for which exposure is claimed.

SUPPLEMENTAL RESPONSE 8/15/14 :

        (a)   See without limitation Exhibit D.

        (b)   See without limitation Exhibit A. Plaintiff supplements Exhibit A with the following coworkers: Milton Boyer, Steve Delis, Jim Genett, Jerry Saindon, and Jim Binder.

Plaintiff reserves the right to supplement this response after further investigation and discovery.

21.   For each of the jobs sites identified in Interrogatory No. 17, identify the following:

        (a)   the name and address of any companies, other than your employer, working with asbestos-containing materials at that job site;

        (b)   all trades from which workers were present at that job site.

ANSWER:   Plaintiff does not know.  Plaintiff's attorneys states:  No further companies are known at present. Trades present at the job site include without limitation production workers, maintenance workers, and other personnel as per Weyerhaeuser's job classifications.

22.   List any protective or safety devices used or worn by you in the handling of products allegedly manufactured by the defendants and state further the dates used, the job sites where used, the nature of the device, the manufacturer or supplier of the device, and how you used each device in your trade or profession.

ANSWER:    At some points in plaintiff's career from approximately 1974 to 1978, plaintiff sometimes wore masks when he was working in the core room at the core mill. The masks were made and sold by 3M Company.

Plaintiff did not wear masks or other protective gear when he was not working.

SUPPLEMENTAL RESPONSE 8/15/14:

In substitution for the initial response, Plaintiff states: At some points in plaintiff's career from approximately 1974 to 1978, Plaintiff wore masks when he was working in certain parts of the core room at the core mill as required by his employer, Weyerhaeuser. The masks were made and sold by 3M Company.

Plaintiff did not wear masks or other protective gear when he was not working.

23.    State whether you were ever a member of any union and, if so, for each union please state:

        (a)    the name and local number of the union;
        (b)    the union hall from which you worked;
        (c)    the date you joined the union;
        (d)    your sponsor in the union;
        (e)    if you ever ran for or held office in the union;
        (f)    if you ever filed a grievance with any union.

ANSWER:    (a)    Carpenters 1733
                (b)    Marshfield, WI
                (c-d)  Plaintiff joined the union when he started at Weyerhaeuser, July 16, 1973.
                (e)    No.
                (f)    Plaintiff once filed a grievance about not getting overtime others were getting overtime with less seniority. Plaintiff does not recall further specifics as to that grievance.

24.    Did your labor union or employer advise you to follow certain safety procedures designed to protect you from contracting asbestos related diseases and, if so, state which unions or employers rendered such advice, the nature of such advice, the dates on which such advice was given, and describe any written information or literature discussing asbestos related diseases which was provided you by any such union or employer.

ANSWER:     Plaintiff does not remember ever being warned by his union about the dangers of
asbestos. Plaintiff understood that his work activities at the Marshfield door
plant were not dangerous due to the dust collection procedures.  Plaintiff
understood that he was required to wear a mask in the core room at times, but he
did not know whether this had any relation to asbestos.  By the time plaintiff was
told about the dangers of asbestos, plaintiff believed asbestos had ceased to be
used or present at the Marshfield door plant. Plaintiff never received advice or
warnings about non work exposures to asbestos.

Plaintiffs attorneys state: Weyerhaeuser documents contain information about
safety practices and witnesses have testified about safety practices.
Communication, implementation, and enforcement of the information and
practices varied based on departments, practices of management, and the duties
of each individual employee.  Individual employees  often did not receive,
understand, or appreciate the information or practices reflected in company
documents or testimony of other witnesses.

SUPPLEMENTAL RESPONSE 8/15/14:

In substitution for the initial response, Plaintiff states:

Plaintiff does not remember ever being warned by his union about the dangers of
asbestos. Plaintiff understood that his work activities at the Marshfield door plant
were not dangerous due to the dust collection procedures.  Plaintiff understood
that he was required to wear a mask in the core room at times, but he did not
know whether this had any relation to asbestos.  By the time plaintiff was told
about the dangers of asbestos, plaintiff believed asbestos had ceased to be used or
present at the Marshfield door plant. Plaintiff never received advice or warnings
about non work exposures to asbestos.

Plaintiffs attorneys state: Weyerhaeuser documents and testimony in these
Marshfield cases contain information about safety practices and what witnesses
have testified about safety practices.

25.    State the names and current or last known addresses of all persons who ever told you or
whom you ever heard state that asbestos fibers or asbestos products could be hazardous to
your health.

ANSWER:     When the Marshfield door plant was sold, a doctor who plaintiff understood was
working for Weyerhaeuser told plaintiff that plaintiff did not need to worry about
asbestos unless the asbestos got into the tissue of his lungs, and if that happened,
there was no cure.  No further details were provided by the doctor.  Plaintiff does

not remember the doctor's name.

26.    State the name, address, telephone number and professional background of each and every person who may be called by the plaintiff to testify to establish a causal relationship between the injuries alleged and the defendants' products.  State the facts and opinions to which each will testify and identify the documents on which each relies.

ANSWER:    Plaintiff does not know.  Plaintiff's attorneys state: Witnesses pursuant Federal Rule of Civil Procedure, Rule 26(a)(2) will be disclosed pursuant to scheduling order when issued.

27.    State the name, address, telephone number and professional background of each and every person who may be called by the plaintiff to testify to establish that the defendants' products were defective or unreasonably dangerous.  State the facts and opinions to which each will testify and identify the documents on which each relies.

ANSWER:    See answer to Interrogatory No. 26.

28.    With regard to individuals, if any, named in the previous three interrogatories, state whether or not said individuals have rendered a written report of any kind to the plaintiffs or their attorneys and, if so, state the subject matter contained in said report, the substance of fact and opinions to which the expert is expected to testify, if called, and state a summary of the grounds for each opinion.

ANSWER:    See answer to Interrogatory No. 26.

29.    State whether you or your attorneys or agents know of the existence of any statements, signed or unsigned, oral, written, or court reported, from or by any person including any person hereto, which has or claims to have knowledge concerning the matter alleged in the complaint, or who was or claims to have been a witness to any part of the exposure alleged by you.  If so, please state:

    (a)    whether the statement was written, oral, recorded, reported, reported by shorthand, or otherwise preserved;

    (b)    the full name of the current or last known address of the person or persons, or entity, which took the statements and the date such statement was made;

    (c)    the full name and current or last known address of each person, firm, or entity which has possession of the statement or copies thereof.

ANSWER:    Plaintiff objects as to any statements made by clients of Cascino Vaughan Law Offices provided for the clients' own cases and as to interview notes because they are protected under the work product doctrine and protected by attorney-client

privilege. Without waiving objections, plaintiff's attorneys state: Testimony in the form of affidavits, declarations, and transcripts has been made in cases concerning the Marshfield door plant. Plaintiff's counsel is preparing a list of such known to plaintiff's counsel and copies which are available to plaintiff's counsel at the present time. Plaintiff also refers defendants to answers to Interrogatory No. 19 and 20.

SUPPLEMENTAL RESPONSE 8/15/14:

See without limitation the list of testimony attached as Exhibit E. See also the Declaration of Richard Masephol dated June 6, 2014, which was served on all defendants on July 11, 2014.

30.     State the name and current or last known address of each and every person who was interviewed by or on behalf of you, your attorneys or agents with respect to the allegations contained in the complaint, stating for each person:

    (a)    the name and current or last known address of the person interviewed, the full name and address of the person's employer at the time of the interview, and the name and current or last known address of the interviewer, as well as the dates of all interviews;

    (b)    whether any notes, records, jottings, memoranda, tape recordings, or statements were ever made of any interviews with that person, and if so, the name and current or last known address of each and every person in custody or control of same.

ANSWER:     Plaintiff objects as to persons interviewed by counsel based on work product privilege. Without waiving objections, plaintiff's attorneys state: See answers to Interrogatories No. 16, 17, 18, 19, 20 and 21.

31.     List or describe each and every object or document, such as directories, catalogs, shipping slips, W-2 forms, tax records, diaries, calendars, invoices, packing slips, materials, publications or lists from whatever source which you used, or your attorneys or agents used, in compiling the names of the defendants in this cause.

ANSWER:     None as of this date.

32.     Do you have any of the following which serve as the basis of this claim in your possession, or in the possession of your attorneys or agents?

    (a)    samples of asbestos materials;

    (b)    packaging from asbestos materials;

       (c)     photographs of your places of employment or products used at your places of employment.

       (d)     photographs of asbestos products or asbestos packaging which are the basis of this claim.

ANSWER:  (a)     Plaintiff does not know. Plaintiff's attorneys state: None to date.

       (b)     Plaintiff does not know. Plaintiff's attorneys state: None to date.

       (c)     Plaintiff does not know. Plaintiff's attorneys state: None to date.

       (d)     Plaintiff's attorneys have photos of asbestos products which have been received in other asbestos cases. These will be made available upon request at the Cascino Vaughan Law Offices ("CVLO") Chicago office.

**SUPPLEMENTAL RESPONSE 8/15/14:**

       (c)-(d)  Plaintiff's attorneys state: Attached as Exhibit F are all responsive photos that can be located at this time.

33.     If, as the result of the alleged illness or illnesses, injury or injuries you claim to have sustained a loss of wages, earnings, income, or profit, state:

       (a)     all dates on which you were unable to work due to the illness of illnesses, injury or injuries;

       (b)     the name and address of your employer at the time you learned of the illness, injury or disease of which you complain;

       (c)     the name and address of each person who recommended that you did not work during such period;

       (d)     the name of any potential employer who refused you work because of any illness or illnesses, injury or injuries allegedly sustained as a result of the exposure;

       (e)     the date or inclusive dates on which you sought work but were unable to work for reasons not related to the illnesses or injuries allegedly sustained as a result of the exposure complained of.

ANSWER:    Plaintiff is unable to work due to the mesothelioma. He was working for Masonite when he learned of his illness, and he has been on sick leave since learning of his diagnosis. Dr. Hedy Lee Kindler told plaintiff he should no longer be working.

**SUPPLEMENTAL RESPONSE 8/14/14:**

       (a)     Approximately December 2013 to present.

       (b)     Marshfield DoorSystems

> 1401 East Fourth Street
> Marshfield, WI 54449-7780
> (c)   Dr. Hedy Lee Kindler
> The University of Chicago Medicine
> 5841 S. Maryland Avenue
> Chicago, IL 60637
> (d)-(e) None at this time.

34.   If loss of wages, earnings, income, or profit is claimed, state:

> (a)   the total amount of claimed loss and the manner or method of computing same;
> (b)   provide a complete, itemized computation of such claimed loss;
> (c)   the nature and potential source of the lost wages, earnings, income or profit, and the date of the claimed deprivation thereof.

ANSWER:   Plaintiff does not know at this time.  Plaintiff's attorneys state: Loss of wages, earnings, income, profit, and current and future employment benefits, have not been calculated at this time.  Weyerhaeuser or Masonite have possession of plaintiff's employment records which are relevant to this answer.

35.   State and list all monetary expenses, other than the physician and hospital bills, and any and all other items of damages, which you claim to be a result of the illnesses or injuries you allegedly sustained as a result of the exposure complained of.

ANSWER:   Plaintiff does not know.  Plaintiff's attorneys state: The extent of out of pocket losses and other damage amounts have not been calculated at this time.  The out of pocket expenses include without limitation costs of transportation, food, and lodging to travel for medical care.

36.   Identify any claims submitted to bankruptcy trusts or otherwise for the person claiming asbestos exposure in this matter.  State which are submitted for a condition diagnosed before the condition which is the subject of the instant case.

ANSWER:   Plaintiff does not know. Plaintiff's attorneys state: No trust claims have been submitted at this time.

SUPPLEMENTAL RESPONSE 8/15/14:

> In substitution for the initial response: Plaintiff's attorneys have submitted mesothelioma claims on Plaintiff's behalf to the Owens-Corning Fibreboard Asbestos Personal Injury Trust and the G-I Holdings Inc. Asbestos Personal Injury Settlement Trust.